## JADWICA SOWINSKI *v.* LUDWIK SOWINSKI
## (AC 21997)

Foti, Mihalakos and Bishop, Js.

Submitted on briefs June 7—officially released August 27, 2002

*Robert L. Fisher, Jr.*, and *Denise M. Cloutier* filed a brief for the appellant (defendant).

*Steven H. Levy* filed a brief for the appellee (plaintiff).

*Opinion*

FOTI, J. The defendant, Ludwik Sowinski, appeals from the judgment of the trial court in this action for the dissolution of the parties' marriage. On appeal, the defendant claims that the court improperly admitted hearsay regarding the value of certain real property and that in relying on such hearsay, it found the value of such property to be $59,900. We reverse the judgment of the trial court.

The following facts, as found by the court, and procedural history are relevant to our disposition of the defendant's appeal. The parties were married in New York on May 20, 1986. It was the second marriage for both parties, and there were no children born of their marriage. Prior to and during the marriage, the defendant owned two residential properties, one in Salisbury, Connecticut, and the other in Copake, New York. At the time of the dissolution, the defendant, who was retired, resided at the Copake residence, and the plaintiff, who wanted to retire but was still working, resided at the Salisbury residence.

The court found that both parties shared responsibility for the breakdown of the marriage, but also found that the defendant was "primarily at fault" for the breakdown. The court did not award alimony to either party, and it ruled that each party would be responsible for its own insurance and medical expenses. In addition to making other financial orders incidental to its dissolution judgment, the court valued the Salisbury property

at $75,000 and ordered that it be sold. The court ordered the proceeds of the sale to be divided such that 70 percent would be given to the plaintiff and the remaining 30 percent would be given to the defendant. In the alternative, the court afforded the plaintiff the option of purchasing the Salisbury property, prior to its listing for sale, by paying the defendant $20,000. The court valued the Copake property at $59,900 and awarded that property to the defendant. Additional facts will be set forth as necessary.

On appeal, the defendant specifically challenges the court's finding with regard to the fair market value of the Copake property and requests that we reverse the court's financial orders. He points out that the parties disputed the value of the Copake property at trial despite the fact that they had stipulated to the value of the Salisbury property. The defendant argues that the court improperly admitted hearsay as to that issue and that the court relied on such hearsay, in the absence of any other competent evidence in support of its finding, when arriving at its valuation of the Copake property. We agree.

The following additional facts are pertinent to the defendant's claim. On his financial affidavit, the defendant valued the Copake property at $28,000. At trial, the defendant elicited expert testimony from James San Emeterio, a licensed appraiser assistant qualified to conduct appraisals of real property in the state of New York. San Emeterio valued the property at $28,000. The court also admitted into evidence San Emeterio's written appraisal report. The plaintiff did not elicit expert testimony on that issue. As part of his cross-examination, the plaintiff's counsel inquired of San Emeterio in relevant part as follows:

"Q. Okay. Now, the town appraises these properties for tax—real estate tax purposes, doesn't it?

"A. Yeah, that's correct.

"Q. And the people who appraise the property for real estate tax purposes, are they licensed appraisers?

"A. No, that's not—my understanding some are, some are not. They are required to take limited classes.

"Q. Do you have any idea one way or another with regard to this particular subject property?

"A. As to?

"Q. Whether they're licensed or not licensed.

"A. I have no idea whether the town of Copake appraisers are or not.

"Q. Did you research tax reports as part of your appraisal?

"A. We pulled them to get the tax amount, which is put into the form. We do not use that number value as an opinion of value in our report.

"Q. I understand. Because that would be somebody else's opinion of value?

"A. That's correct.

"Q. And what is the opinion of value associated with this piece of property for real estate tax purposes?

"A. The town of Copake has it according to the letter that you just presented to me—

"[Defendant's Counsel]: Objection, Your Honor.

"The Court: Counsel, okay, if this is going to come in, then why don't we get it into evidence, then the witness can testify from it.

"[Plaintiff's Counsel]: I will offer what has been marked as plaintiff's exhibit seven, Your Honor. Again, all of these exhibits have been previously shared with counsel at the trial management.

"The Court: Any objection?

"[Defendant's Counsel]: Same objection. I'm—I voiced my objection to [the plaintiff's counsel] when we met two weeks ago. Anything stated on this document is hearsay. And I do not—

"The Court: Okay. Explain to me why that would not be an exception to the hearsay rule as a business record.

"[Defendant's Counsel]: There has been no foundation that this is a business record of anybody. This is not an appraiser's business record. Presumably, this is a town business record. I just don't know.

"[Plaintiff's Counsel]: The testimony, Your Honor, is that this appraiser utilized these same records and reviewed them when he was making up his opinion of value.

"The Court: The objection is overruled. Plaintiff's [exhibit seven] should be marked. And a description, please?

"[Plaintiff's Counsel]: I think it's a tax bill dated March 31, 2000.

"The Court: Okay.

"[Plaintiff's Counsel]: Addressed to the defendant.

"[Defendant's Counsel]: And, for the record, Your Honor, I object to any statement of value that appears on that document.

"The Court: Your exception, counsel, is noted.

"[Defendant's Counsel]: Thank you. . . .

"[Plaintiff's Counsel]: Sir, what is the opinion of value as far as the town of Copake is concerned for real estate tax purposes?

"A. Fifty-nine thousand, nine hundred."

We first set forth our standard of review relative to the defendant's claim. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case, such as demeanor and attitude of the parties to the hearing. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Simmons* v. *Simmons*, 244 Conn. 158, 174–75, 708 A.2d 949 (1998).

"[I]n determining [whether there has been an abuse of discretion] the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 534, 710 A.2d 757 (1998). "[W]e do not review the evidence to determine whether a conclusion different from the one reached could have been reached." (Internal quotation marks omitted.) *Crowley* v. *Crowley*, 46 Conn. App. 87, 90–91, 699 A.2d 1029 (1997). It is axiomatic that a court's factual finding must have an evidentiary basis.

Our review of the record discloses that the document, admitted as exhibit seven, was the only evidence admitted at trial that supported the court's $59,900 valuation of the Copake property. We must inquire whether the court improperly admitted that evidence and, if it did, whether such ruling constituted harmful error requiring a reversal of the judgment and a remand for reconsideration of all of the court's financial orders.

Our review of claims of alleged error in evidentiary rulings is limited. The issue before us is whether the

court's admission of the document was an abuse of discretion. See *State* v. *Sierra*, 213 Conn. 422, 434–35, 568 A.2d 448 (1990).

A statement, other than one made by the declarant while testifying at the proceedings, offered in evidence to establish the truth of the matter asserted, constitutes hearsay. Conn. Code Evid. § 8-1 (3). A statement may be an oral or written assertion. Id., § 8-1 (1) (A). An out-of-court statement that is not offered for the truth of the matter asserted therein is not hearsay. *State* v. *Ober*, 24 Conn. App. 347, 357, 588 A.2d 1080, cert. denied, 219 Conn. 909, 593 A.2d 134, 135, cert. denied, 502 U.S. 915, 112 S. Ct. 319, 116 L. Ed. 2d 260 (1991).

There appears to be no serious claim that the plaintiff did not offer the tax receipt to prove the truth of what it purported to represent, i.e., that the Copake property was valued at $59,900. The court subsequently valued the Copake property at that precise amount, absent any other evidence as to that amount.

The tax receipt is hearsay. After reviewing the record, we conclude that no hearsay exception applies. Despite the fact that the court appears to have admitted that document under the business records exception to the rule against hearsay, the plaintiff failed to lay any foundation whatsoever to demonstrate the applicability of that exception.[1] See Conn. Code Evid. §§ 8-3 (7) and 8-4 (a).

---

[1] "To be admissible under the business record exception to the hearsay rule, a trial court judge must find that the record satisfies each of the three conditions set forth in . . . [General Statutes] § 52-180. The court must determine, before concluding that it is admissible, that the record was made in the regular course of business, that it was the regular course of business to make such a record, and that it was made at the time of the act described in the report, or within a reasonable time thereafter. . . . In applying the business records exception, the statute [§ 52-180] should be liberally interpreted." (Internal quotation marks omitted.) *Calcano* v. *Calcano*, 257 Conn. 230, 240, 777 A.2d 633 (2001). Further, "[t]o qualify a document as a business record, the party offering the evidence must present a witness who testifies that these three requirements have been met." *Ninth RMA Partners, L.P.*

The plaintiff argues that she did not offer the document to prove the truth of what it represented. Rather, she claims that she offered the document to "to impeach the testimony of the defendant's expert witness" and that the document was a proper subject of cross-examination because San Emeterio had "reviewed the records of the property" to form his opinion. Our review of the record fails to disclose that the plaintiff's offer was limited for any such purpose. Further, the record reflects that when asked whether he used such tax reports as part of his method of appraisal, San Emeterio replied: "We pulled them to get the tax amount, which is put into the form. We do not use that number value as an opinion of value in our report." That testimony constituted clear evidence that San Emeterio did not rely on the tax receipt in appraising the Copake property.

Having concluded that the court improperly admitted the document into evidence, we next consider what remedy, if any, this court should afford the defendant. We are mindful that "[t]he issues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Sunbury* v. *Sunbury*, 210 Conn. 170, 175, 553 A.2d 612 (1989). In the present case, it is clear that the court relied on the document and that such reliance had an effect on the court's distribution of all of the marital assets. Accordingly, we must reverse the judgment with respect to all financial orders and order that such issues be reconsidered on remand.

v. *Krass*, 57 Conn. App. 1, 9, 746 A.2d 826. cert. denied, 253 Conn. 918, 755 A.2d 215 (2000). The plaintiff did not produce any such evidence, and San Emeterio's testimony did not support introduction of the document under the exception.

The judgment is reversed as to the financial orders only and the case is remanded for a new hearing on all financial issues in accordance with law.

In this opinion the other judges concurred.